# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **LINDA RUFFIN,** ) | **CASE NO.** |
| c/o David B. Malik ) | |
| 8437 Mayfield Road, Suite 101 ) | |
| Chesterland, Ohio 44026 ) | |
| *Individually and as Administratrix of the* ) | **JUDGE:** |
| *Estate of Robert Sharp,* ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **COMPLAINT AND JURY DEMAND** |
| ) | |
| **CUYAHOGA COUNTY EXECUTIVE &** ) | |
| **COUNCIL (CUYAHOGA COUNTY)** ) | |
| **1219 Ontario Street** ) | |
| **Cleveland, Ohio 44113** ) | |
| ) | |
| **and** ) | |
| ) | |
| **CLIFFORD PINKNEY** ) | |
| **CUYAHOGA COUNTY SHERIFF** ) | |
| **The Justice Center** ) | |
| **1215 West 3rd Street** ) | |
| **Cleveland, Ohio 44113** ) | |
| *In his official capacity as Cuyahoga County* ) | |
| *Sheriff,* ) | |
| ) | |
| **and** ) | |
| ) | |
| **METROHEALTH MEDICAL CENTER** ) | |
| **2500 Metrohealth Medical Center** ) | |
| **Cleveland, Ohio 44109** ) | |
| ) | |
| **and** ) | |
| ) | |
| **DR. THOMAS TALLMAN** ) | |
| **METROHEALTH MEDICAL CENTER** ) | |
| **2500 Metrohealth Medical Center** ) | |
| **Cleveland, Ohio 44109** ) | |
| *Individually and in his official capacity as* ) | |
| *Medical Director and Jail Physician,* ) | |
| ) | |

1

| | |
|---|---|
| **and** | ) |
| | ) |
| **MARCUS HARRIS, RN** | ) |
| **2500 Metrohealth Medical Center** | ) |
| **Cleveland, Ohio 44109** | ) |
| *Individually and in his official capacity as a* | ) |
| *Jail Nurse.* | ) |
| | ) |
| **and** | ) |
| | ) |
| **ELIZABETH KEMPE, CPN** | ) |
| **2500 Metrohealth Medical Center** | ) |
| **Cleveland, Ohio 44109** | ) |
| *Individually and in her official capacity as a* | ) |
| *Jail Nurse.* | ) |
| | ) |
| **and** | ) |
| | ) |
| **OFFICER ANDERSON** | ) |
| **The Justice Center** | ) |
| **1215 West 3rd Street** | ) |
| **Cleveland, Ohio 44113,** | ) |
| *Individually and in his official capacity* | ) |
| | ) |
| **and** | ) |
| | ) |
| **CORPORAL HUERSTER** | ) |
| **The Justice Center** | ) |
| **1215 West 3rd Street** | ) |
| **Cleveland, Ohio 44113,** | ) |
| *Individually and in his official capacity* | ) |
| | ) |
| **and** | ) |
| | ) |
| **JOHN DOE #1** | ) |
| **(Identified in jail records as "SHCAW")** | ) |
| **The Justice Center** | ) |
| **1215 West 3rd Street** | ) |
| **Cleveland, Ohio 44113,** | ) |
| *Individually and in his official capacity* | ) |
| | ) |
| **and** | ) |
| | ) |
| **JOHN AND JANE DOE POLICY** | ) |
| **MAKERS #2-5** | ) |
| **The Justice Center** | ) |

2

| | |
|---|---|
| **1215 West 3rd Street** | ) |
| **Cleveland, Ohio 44113,** | ) |
| *Individually and in their official capacities* | ) |
| | ) |
| **and** | ) |
| | ) |
| **JOHN AND JANE DOE CORRECTIONS** | ) |
| **AND MEDICAL STAFF #6-10,** | ) |
| **The Justice Center** | ) |
| **1215 West 3rd Street** | ) |
| **Cleveland, Ohio 44113,** | ) |
| *Individually and in their official capacities* | ) |
| | ) |
| **and** | ) |
| | ) |
| **JOHN AND JANE DOE ENTITIES** | ) |
| **PROVIDING MEDICAL CARE #11-13,** | ) |
| **The Justice Center** | ) |
| **1215 West 3rd Street** | ) |
| **Cleveland, Ohio 44113,** | ) |
| *Individually and in their official capacities* | ) |
| | ) |
| **Defendants.** | |

## I. INTRODUCTION

1. This civil rights and wrongful death action challenges Defendants' failure to provide Robert Sharp constitutionally adequate medical care and care consistent with community standards. Defendants knew Robert Sharp had ingested or stuffed heroin into his body. The medical and corrections Defendants knew Mr. Sharp was, therefore, in danger of overdosing on heroin. Defendants also knew of the well-publicized heroin epidemic in Cuyahoga County and that inmates in the Cuyahoga County Corrections Center ("CCCC") frequently smuggle in heroin, use heroin, ingest, and stuff heroin in order to keep from being further criminally prosecuted or charged.  Despite their knowledge of the heroin epidemic and habits of heroin users, Defendants failed to provide Mr. Sharp with adequate medical treatment and adequate correctional observation and care.  Mr. Sharp was deliberately not sent to the hospital despite

3

multiple reasons to do so. Had Mr. Sharp received adequate assessment, monitoring, nursing treatment, medical treatment, and correctional observation and care, he would have survived. Part of the reason for his death included an understaffed jail. Since Mr. Sharp's in custody treatment was inadequate, he died of "Acute intoxication by the combined effects of heroin, diphenhydramine, and hydroxyzine," after being left alone in a cell, isolated in "the hole" by the Defendants in CCCC on March 26, 2015. Each Defendant's deliberate indifference to and negligence in providing medical care to Mr. Sharp proximately caused his death. Mr. Sharp's mother, the Administratrix of his estate, brings this action to secure fair compensation and to prevent future inmates from experiencing such suffering and death.

## II.  JURISDICTION AND VENUE

2. Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367. Venue is proper in this division.

## III.  PARTIES

3. Linda Ruffin is the mother of Robert Sharp, who is deceased. Ms. Ruffin brings this suit as the Administratrix of the Estate of Robert Sharp for the benefit of her next of kin.

4. Defendant Cuyahoga County is a unit of local government established under the laws of the State of Ohio. The County is sued through the Cuyahoga County Executive and Council who are named only in their official capacity pursuant to O.R.C. §305.12. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

5. Defendant Sheriff Clifford Pinkey is and was at all times relevant to this action the Sheriff of Cuyahoga County, Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times

relevant to this case acted under color of law. He is sued in his official capacity.

6. Defendant MetroHealth Medical Center is and was all times relevant to this action the contracted party providing through its medical professionals, necessary, regular, and routine medical services, examinations, and treatment to the inmates of the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

7. Defendant Dr. Thomas Tallman is and was at all times relevant to this action the jail physician and Medical Director serving Cuyahoga County at the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

8. Defendant Marcus Harris is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity

9. Defendant Elizabeth Kempe, CPN is and was at all times relevant to this action a nurse practitioner employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

10. Defendant Officer Anderson is and was at all times relevant to this action an officer employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

11. Defendant Corporal Huerster is and was at all times relevant to this action a corporal employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times

relevant to this case acted under color of law.  He is sued in his individual and official capacity.

12. Defendant John Doe #1 (Identified in jail records as "SHCAW") is and was at all times relevant to this action a corporal employed in the CCCC.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and official capacity.

13. John and Jane Does #2-5 are and were at all times relevant to this action Policy Makers who worked for the CCCC.  Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  They are sued in their individual and official capacities.

14. John and Jane Doe Corrections and Medical Staff #6-10 are and were at all times relevant to this action Corrections and Medical Staff in the CCCC.  Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  They are sued in their individual and official capacities.

15. John and Jane Doe Entities Providing Medical Care #11-13, are and were at all times relevant to this action Entities Providing Medical Care in the CCCC.  Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  They are sued in their individual and official capacities.

### IV.  FACTS

### A. Mr. Sharp was known to corrections and medical Defendants to have ingested or stuffed heroin and was known to be in danger of overdosing.

16. Mr. Robert Sharp was booked into the CCCC on March 24, 2015.

17. On March 25, 2015, at 10:40 a.m., a "shakedown" was conducted in the jail one 7E pod where Mr. Sharp was assigned and housed.

18. The reason for the "shakedown" was that an inmate, Angelo Basile, was found with several blue bags containing a white powder substance and several white pills.

19. Defendants knew that drugs, including heroin, were brought into the jail and they were charged with the duty to locate such drugs.

20. Defendants also knew that at that time, the mechanism of bringing these drugs into the jail, was for the inmate to ingest or stuff balloons filled with the drugs into their rectum.

21. Mr. Bastile stated that two other inmates, Bryan Cross and Robert Sharp, had in fact "keistered" several other bags of the heroin. "Keistered" is a term that refers to stuffing heroin in one's rectum.

22. Bryan Cross and Robert Sharp were searched and then taken to a medical area.

23. Mr. Sharp was actually brought to the dispensary by corrections staff.

24. CCCC corrections staff informed Defendant nurses Marcus Harris, RN and Defendant Elizabeth Kempe, CPN, that heroin was found in Mr. Sharp's pod and that, per other inmates, Mr. Sharp in fact possessed heroin.

25. Armed with the information that Mr. Sharp had ingested or stuffed heroin, corrections staff requested confirmation from nursing and medical staff that Mr. Sharp had heroin in his rectum.

26. Jail physician and Defendant, Dr. Tallman, was informed that Mr. Sharp was suspected of ingesting, "keistering," or stuffing heroin and therefore was in danger of overdosing.

27. Dr. Tallman, without seeing Mr. Sharp, issued an ordered for Mr. Sharp to be examined.

28. In medicine and correctional medicine, it is well known that the community standard used to detect heroin ingestion is to utilize and perform a computed tomography ("CT") scan of the body.

29. Defendants had access, through procedure, to a CT scan by which Mr. Sharp could have been tested to determine if he was fit for medical and correctional clearance and fit to be housed in the CCCC, or required being hospitalized until the heroin bag cleared his system.

30. Instead of performing a CT scan on Mr. Sharp in the jail, or sending him to the hospital for a CT scan, Defendant Elizabeth Kempe, CPN, instead merely x-rayed Mr. Sharp's abdomen.

31. Medical and corrections Defendants essentially cleared Mr. Sharp for residency in the CCCC based solely on an x-ray.

32. The x-ray did not detect any ingestion of heroin.  In medicine and correctional medicine, the sole use of an x ray to identify heroin balloons falls below the standard of care.

33. Defendant Kempe, gave the other inmate Bryan Cross magnesium citrate to assist him in passing any balloons he ingested or stuffed.

34. It is unknown if Defendants gave Mr. Sharp magnesium citrate.

35. After Mr. Sharp was cleared for residency in the CCCC, no jail, corrections or medical staff checked to see if Mr. Sharp had "passed" a heroin filled balloon in a bowel movement or whether he was still at serious risk for serious injury or death.

36. Defendants Harris and Kempe had information that Mr. Sharp had ingested or stuffed heroin.

37. Defendant Harris and Defendant Kempe, are nurses with medical decision making capability in CCCC.

38. Defendant Harris and Defendant never prevented Mr. Sharp from being placed in isolation in "the hole."

39. Defendant Harris and Defendant Kempe were nurses who could have determined whether or not to send Mr. Sharp to the hospital for diagnosis and exam.

40. Defendant Harris and Defendant Kempe nevertheless made the decision to not send Mr.

Sharp to the hospital for a CT scan despite being aware of Mr. Sharp ingesting or stuffing heroin and being at a substantial risk of overdosing.

41. Defendant Harris and Defendant Kempe were deliberately indifferent to Mr. Sharp's serious medical condition and serious risk for injury or death.

42. Defendant Dr. Tallman had information that that Mr. Sharp had ingested or stuffed heroin.

43. Defendant Dr. Tallman is the Medical Director of the jail with decision making capability, and is supervisor and policymaker.

44. Defendant Dr. Tallman never personally examined Mr. Sharp despite being contacted about Mr. Sharp ingesting or stuffing of heroin and being at a substantial risk of overdosing.

45. Defendant Dr. Tallman never ordered a CT scan despite the ability to do so.

46. Defendant Dr. Tallman never prevented Mr. Sharp from being placed in isolation in "the hole."

47. Defendant Dr. Tallman could have sent Mr. Sharp to the hospital for diagnosis and exam.

48. Defendant Dr. Tallman nevertheless made the decision to not send Mr. Sharp to the hospital for a CT scan despite being aware of Mr. Sharp ingesting or stuffing heroin and being in danger and at risk of overdosing.

49. Defendant Dr. Tallman was deliberately indifferent to Mr. Sharp's serious medical condition and serious risk for injury or death.

   **B. Robert Sharp was placed in "the hole" without a CT scan and without adequate observation.**

50. On March 25, 2015 at 19:00, Mr. Sharp was directed to be placed in "the hole," an isolated one-man cell away from the other inmates.

51. Mr. Sharp was actually isolated from inmates and staff and placed in "the hole" by Defendant John Doe #1 (identified only as SHCAW in CCCC records), John Does 2-5, and John Does

6-10.

52. Once placed in "the hole," no Defendant from corrections or medical ever checked on Mr. Sharp until that moment in time when he was finally found unresponsive.

53. Going to "the hole" and being isolated from others is an act of discipline by jail staff and supervisors.

54. Once isolated in "the hole," Mr. Sharp was then inadequately monitored and observed by corrections and medical Defendants to see if he demonstrated signs of heroin overdose or worse.

55. Mr. Sharp was not adequately monitored and observed, despite the fact corrections and medical Defendants possessed legitimate information that Mr. Sharp had ingested or stuffed heroin.

56. Observation and monitoring checks at the CCCC are required to be performed every 15-30 minutes.

57. Had Mr. Sharp been adequately observed and monitored by corrections and medical Defendants, it would have been apparent and obvious to each Defendant and their staff that Mr. Sharp was showing the dangerous signs of associated with heroin overdose.

58. Defendant Harris and Defendant Kempe did not adequately re-examine Mr. Sharp nor did any of the other Defendant nurses or medical staff.

59. Defendant Dr. Tallman never adequately personally examined Mr. Sharp. Defendant Dr. Tallman never adequately evaluated or treated Mr. Sharp. Defendant Dr. Tallman never ordered the appropriate diagnostic tests for Mr. Sharp.

60. Dr. Tallman did not even respond when Mr. Sharp was found unresponsive in "the hole."

61. Defendants CCCC Officer Anderson and Corporal Huerster, the corrections staff who were

also charged with observing Mr. Sharp, failed to adequately check him, despite information and knowledge that Mr. Sharp was placed in the hole for heroin usage, ingestion, or stuffing.

62. Had each Defendant and their staff adequately treated, observed, and monitored Mr. Sharp, the signs of overdose would have been apparent and obvious.

63. Defendants were deliberately indifferent to the serious medical needs of Mr. Sharp including the risk for serious injury or death.

64. Defendants knew of and disregarded an excessive risk to Mr. Sharp's health and safety.

65. Defendants were aware that there was a serious medical need and a substantial risk of serious harm to Mr. Sharp and they deliberately disregarded that risk.

**C. The Medical Examiner's Findings.**

66. The Cuyahoga County Medical Examiner eventually found that Mr. Sharp died of "Acute intoxication by the combined effects of heroin, diphenhydramine, and hudroxyzine. ACCIDENTAL."

67. Upon autopsy, it was discovered that Mr. Sharp had ingested a bag of heroin and the heroin leaked from the balloon into his body, causing him to overdose and die.

68. With the exercise of reasonable care by Defendants, Mr. Sharp would have survived.

69. Had there not been deliberate indifference by Defendants, Mr. Sharp would have survived.

**D. Policies, Practices, and Culpable Conduct.**

70. The use of heroin, heroin overdose, and the related symptoms are serious medical needs. The seriousness of heroin use in Cuyahoga County and the CCCC, the seriousness of the medical need created when used, the seriousness of the symptoms and the knowledge that heroin use, ingestion or stuffing can cause death was well known to all Defendants named in this lawsuit.

71. Signs of heroin overdose include slow breathing, less than 12 breaths per minute, no response

when one is shaken, slow or no pulse, limpness, and vomiting.

72. An overdose is not lethal if detected and treated in a timely manner.

73. While in the custody and control of the county, Mr. Sharp was in the exclusive control of Defendants and reliant upon them for appropriate handling and care.

74. Defendants MetroHealth Medical Center, Dr. Tallman, Sheriff Pinkey, and John Does #2-5 and #11-13 established the medical policies, practices and customs at the CCCC.

75. Defendant County is likewise responsible for developing and implementing adequate policies and procedures for the protection, health, welfare and safety of inmates-even inmates who have ingested or stuffed heroin.

76. Each Defendant has accepted the responsibility to protect the health, welfare and safety of each inmate.

77. Defendants County, MetroHealth Medical Center, Dr. Tallman, and Sheriff Pinkey and John Does #2-5 and #11-13 are responsible for training each of the CCCC staff, medical and corrections, with respect to the provision of corrections and medical care to inmates at the facility with serious medical needs, including those who have ingested and or stuffed heroin. These Defendants failed to adequately train jail staff.

78. Defendants County, MetroHealth Medical Center, Dr. Tallman, Sheriff Pinkey, and John Does #2-5 and #11-13 failed to institute adequate policies, procedures, customs, usages and protocols regarding identification, referral and treatment of inmates who use, take, ingest, or stuff heroin and are therefore at risk of overdosing. The inadequate policies, procedures, customs, usages and protocols were the moving force behind the injury and death suffered by Mr. Sharp.

79. All Defendants were deliberately indifferent to the serious medical needs of Mr. Sharp. They

failed to train and supervise staff to implement adequate jail policies, procedures, customs, usages and protocols that would properly address the obvious and known health and safety risks experienced by inmates with symptoms of heroin use, ingestion, stuffing and overdose.

80. Mr. Sharp was not properly monitored by corrections staff or medical staff. This failure was caused by the inadequate policies, practices, customs, usages, and protocols at the CCCC.

81. The failure by Defendants Dr. Tallman, Marcus Harris, and Elizabeth Kempe, CPN, and John Does #6-10 and #11-13 to properly treat Mr. Sharp was negligent, knowing, intentional, reckless, wanton, and deliberately indifferent to the serious medical needs of Mr. Sharp.

82. All the Defendants acted negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference to the serious medical needs of Mr. Sharp.

83. Defendant Dr. Tallman, as jail physician and Medical Director, was the final authority on policy for Defendant MetroHealth Medical Center at CCCC, and it was those inadequate policies which he approved and implemented that were the moving force behind the injury and death suffered by Mr. Sharp.

84. The conduct of Defendants also shocks the conscience, violates the standards of decency in an evolving society, and betrays the trust that inmates and the public place in jail staff to provide proper medical care for those over whom they exercise custody.

    **E.  Harm to Mr. Sharp and His Family.**

85. Robert Sharp suffered physical injury, pain, emotional and psychological trauma, and eventually died as a result of the failure to provide adequate medical care described above.

86. As a further direct and proximate result of Robert Sharp's wrongful death, his survivors, next of kin and/or heirs have suffered permanent damages, including but not limited to, grief,

depression, and severe emotional distress. They have incurred funeral bills and other expenses and will incur additional expenses in the future.

## V. FIRST CAUSE OF ACTION – 42 U.S.C. §1983

87. Plaintiff re-alleges the above paragraphs 1-86 as if fully rewritten herein.

88. The Defendants have, under color of state law, deprived Robert Sharp of rights, privileges and immunities secured by the Eighth and Fourteenth Amendments to the United States Constitution, including but not limited to the right to adequate medical care as a jail inmate.

89. Defendants were each deliberately indifferent to the serious medical needs of Robert Sharp. Defendants knew Mr. Sharp was at risk of heroin overdose. Defendants were aware that there was a serious medical need and a substantial risk of serious harm to Mr. Sharp and they deliberately disregarded that risk. As a result of Defendants' conduct, Mr. Sharp died.

## VI. SECOND CAUSE OF ACTION – WRONGFUL DEATH

90. Plaintiff re-alleges the above paragraphs 1-89 as if fully rewritten herein.

91. All Defendants' actions caused the wrongful death of Mr. Sharp, resulting in damages recoverable under R.C. §2125.02.

## VII. THIRD CAUSE OF ACTION – NEGLIGENCE

92. Plaintiff re-alleges paragraphs 1-91 as if fully rewritten herein.

93. On March 24-26, 2015, Defendants County, MetroHealth Medical Center, Dr. Tallman, Marcus Harris, Elizabeth Kempe, and John Does #11-13 acted in a negligent, reckless, intentional, deliberately indifferent and willful manner and breached their duty and standard of care to provide medical care to Mr. Sharp during his incarceration thereby proximately causing injury to and the death of Mr. Sharp, all in violation of Ohio law.

## VIII. FOURTH CAUSE OF ACTION – MALPRACTICE BY PHYSICIAN

94. Plaintiff re-alleges the above paragraphs 1-93 as if fully rewritten herein.

95. Defendant Dr. Tallman failed to use reasonable care in diagnosing and treating the classic symptoms of taking, ingesting, and stuffing of heroin, and the dangers of overdose as a result, experienced by Robert Sharp. Defendant Dr. Tallman breached the duty of care to Mr. Shap.

96. As Jail Physician and Medical Director, Defendant Dr. Tallman failed to ensure that adequate policies were in place at the CCCC to appropriately identify, diagnose and treat inmates at the jail who had taken, ingested, or stuffed heroin and were in danger of overdose.

97. Defendant Dr. Tallman failed to train and supervise the jail staff to provide services consistent with the standard of care.

98. The conduct of Defendant Dr. Tallman deviated from standard medical practice, all in violation of Ohio law. See Affidavit of merit (attached). This conduct was a proximate cause of Mr. Sharp's injury and death.

## IX. FOURTH CAUSE OF ACTION – NEGLIGENCE BY NURSES

99. Plaintiff re-alleges the above paragraphs 1-98 as if fully rewritten herein.

100. Defendant Harris breached his duty to provide medical care to Mr. Sharp consistent with standard medical practice and violated Ohio law. See Affidavit of merit (attached). This conduct was a proximate cause of Mr. Sharp's injury and death.

101. Defendant Kempe breached her duty to provide medical care to Mr. Sharp consistent with standard medical practice and violated Ohio law. See Affidavit of merit (attached). This conduct was a proximate cause of Mr. Sharp's injury and death.

## X. <u>JURY DEMAND</u>

102. Plaintiff hereby demands a trial by jury of all issues triable by jury.

## XI. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands that this Court:

    A. Award Plaintiff compensatory damages in an amount to be shown at trial;

    B. Award Plaintiff punitive damages (except against the County) in an amount to be shown at trial;

    C. Award Plaintiff reasonable attorney's fees, costs and disbursements;

    D. Award Plaintiff pre and post judgment interest;

    E. Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Sara Gedeon
David B. Malik (0023763)
Sara Gedeon (0085759)
Malik Law
8437 Mayfield Road, Suite #101
Chesterland, Ohio 44026
440.729.8260
440.490.1177 Fax
david@davidmaliklaw.com
sara@davidmaliklaw.com
Attorney for Plaintiff